# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **STEPHANIE LEINER,**<br>Individually and On Behalf of<br>All Others Similarly Situated,<br><br>　　　　　　　**Plaintiff,**<br>　　v.<br><br>**JOHNSON & JOHNSON**<br>**CONSUMER COMPANIES,**<br>**INC.,**<br>　　　　　　　**Defendant.** | **CASE NO. 15-cv-5876**<br><br>Judge:<br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Stephanie Leiner ("Plaintiff" or "Leiner"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges on personal knowledge as to all facts related to herself and upon information and belief (based upon the investigation of counsel) as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Defendant, Johnson & Johnson Consumer Companies, Inc. ("J&J" or "Defendant"), manufactures, markets, and sells Johnson & Johnson Bedtime Products, including JOHNSON'S® BEDTIME® Bath ("Bedtime Bath") and JOHNSON'S® BEDTIME® Lotion ("Bedtime Lotion") (collectively, "Bedtime Products" or "Products"), which purport to help a baby sleep better. Specifically, on the front of each bottle, there is a prominent logo that proclaims: "CLINICALLY PROVEN, HELP BABY SLEEP BETTER."[1] J&J also markets and advertises, on the back of the bottles, that it has created a "clinically proven" nighttime routine of a warm bath, gentle massage (with the Products), and quiet activities that will help babies sleep better (*e.g.*, reading, cuddling, and singing lullabies) (Exhibits 1, 2).

2. Since the introduction of the Bedtime Products in 2000, Defendant's nationwide

---

[1] A true and correct copy of the current product label for Bedtime Lotion is attached hereto as Exhibit 1, and a true and correct copy of the current product label for Bedtime Bath is attached hereto as Exhibit 2.

advertising campaign for the Bedtime Products has been extensive, and Defendant has spent a significant amount of money to convey its deceptive messages to consumers throughout the United States. Defendant used an array of media to convey its deceptive claims about the Bedtime Products over time, including in television, magazines, the Internet, and the Product labels. Through this massive marketing campaign, Defendant has worked to convey one message: the Bedtime Products are clinically proven to help babies sleep better. Each person who purchased the Bedtime Products has been exposed to that advertising message and, in particular, the misleading labels, and purchased the Products as a direct result of that message.

3. Defendant's claims are deceptive and misleading, and have been designed to induce consumers to buy Bedtime Products. Defendant knew or should have known, at the time it began selling the Products, that there are no studies showing that Bedtime Products are clinically proven to provide any results, and Defendant has no basis to make the claims about its Products.

4. As a result of J&J's deceptive conduct, J&J charges a premium of at least $1.00 for Bedtime Products over its other baby washes and lotions, which premium Plaintiff and other consumers paid (and continue to pay) with the specific understanding, based upon Defendant's false and misleading labeling, advertising, and pervasive representations, that using the Bedtime Products, either alone or in connection with the "clinically proven" nighttime routine, will help babies sleep better. As a result of seeing these false and misleading representations, Plaintiff and consumers bought the Bedtime Products, paid more for the Bedtime Products than they otherwise would have paid absent the wrongful conduct, and have been damaged as a result of the wrongful conduct.

5. This class action seeks to provide redress to consumers in Illinois who have been harmed by the false and misleading marketing practices Defendant has engaged in with respect to the Bedtime Products. Defendant's conduct has included the systematic and continuing practice of disseminating false and misleading information throughout the United States via pervasive multi-media advertising and the Product packaging. These actions were and are

intended to induce unsuspecting consumers, including Plaintiff and the members of the Class, into purchasing the more expensive Bedtime Products, which Products are not clinically proven to have the benefits that are represented. Those very supposed benefits serve as the basis for consumers' decisions to purchase the Bedtime Products, instead of the less expensive J&J baby washes and lotions that have long been sold on the market and do not purport to provide such "clinically proven" benefits.

6. Plaintiff brings this action to obtain redress for those who purchased the Bedtime Products. Plaintiff alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 § 1, *et seq*. ("Illinois Consumer Fraud Act" or "ICFA") and Unjust Enrichment.

7. Though this action, Plaintiff seeks injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class as a result of Defendant's unlawful conduct.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and other costs, and there is minimal diversity because certain members of the Class and Defendant are citizens of different states, as required by 28 U.S.C. § 1332(d)(2).

9. This Court has personal jurisdiction over Defendant because Defendant is authorized to do business, and currently does business, in Illinois.

10. Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because Defendant engages in substantial business throughout this District and a substantial portion of the events and conduct giving rise to the violations alleged in this Complaint occurred in this District.

## THE PARTIES

11. Plaintiff is, and at all times relevant to this action has been, a resident and citizen of Chillicothe, Illinois.

12. J&J is a New Jersey corporation and, at all times relevant to this action, has maintained its principal place of business in Skillman, New Jersey. J&J, thus, is a citizen of New Jersey. J&J sold its Bedtime Products through retail stores, the Internet, and through television and other advertisements, all of which led consumers to purchase the Bedtime Products throughout the United States, including Illinois. J&J knew, or should have known, that the representations made regarding the Bedtime Products were false and misleading at the time that it began distributing the Bedtime Products in the United States market.

## STATEMENT OF FACTS

### Facts Common to Plaintiff and the Class

13. This class action is brought against J&J for the benefit and protection of all purchasers of the Bedtime Products in Illinois.

14. J&J launched its Bedtime Products in 2000. As a general matter, many babies and toddlers have difficulty falling asleep and sleeping through the night. Indeed, J&J's website indicates that "20-30 percent of babies experience regular sleep problems, including difficulty falling asleep and sleeping through the night." Most parents, 76 percent, report a desire to change some aspect of their baby's sleep." http://www.johnsonsbaby.com/difference/baby-science#sleep.

15. Indeed, a majority of families report that sleep is the number one challenge they face. See www.babycenter.com > Expert Advice, Americas Sleep Crisis, July 2012, http://www.babycenter.com/sleepstudy (last visited July 1, 2015).

16. When Defendant introduced its Products, Defendant knew that its target audience would be eager to accept claims that the Products could help babies sleep better. Defendant used this opportunity to lure customers into paying a premium price for the Products by making prominent representations in the marketing materials for the Products, including the front labels for the Products, that simply using the Products would help babies fall asleep more easily and sleep better.

17. J&J has had baby washes and lotions on the market for years. J&J is not in the

4

business of selling routines – it is in the business of selling its Products. In order to sell more products and attempt to capitalize on this perceived market to improve baby's sleep, J&J launched these Products and claimed it had expanded its **product line** to introduce new and innovative **products** to help a baby sleep better.

18. The Bedtime Products are known to customers only by the representations made about the Products by Defendant. If, as is the case here, J&J sold other baby washes and lotions for infants and young children, then customers would have no reason to pay a premium to buy the new products, *i.e.*, the Bedtime Products, unless and until they are exposed to Defendant's labeling and other pervasive messages about the purported properties and benefits of the Products. The label itself, as well as in the marketing material disseminated by Defendant, both make the false and misleading representations about the Products' benefits and properties. In other words, given the existence of similar bath and skin lotion products, long sold by J&J, for washing and moisturizing a baby's skin, consumers would purchase the Bedtime Products if, **and only if,** they were exposed to Defendant's pervasive labeling and advertising campaign that these **new** Products did something that its others did not do – here, it is that the Bedtime Products were (and are) *clinically proven* to help baby sleep better.

19. For example, the Products themselves are touted by Defendant. In its Infant Sleep Guide, which cites to its own "baby care experts" at J&J, Defendant stated that:

> Our new products, enriched with NATURALCALM™ essences, a unique blend of gentle ingredients and soothing aromas, can help your baby sleep better when used as part of a regular nightly routine. **JOHNSON'S® is the first and only brand that's clinically proven to help babies fall asleep easier and sleep through the night better.** To learn more about our products, visit JohnsonsBaby.com/sleep.

(emphasis added).[2]

20. Prior to January 2013, Defendant's websites provided, *inter alia*, Baby Sleep Guides, New Parent's Guide to Better Sleep, and various "studies" to support its misleading claims. While the language on some of these materials has changed slightly between January

---

[2] A true and correct copy of the Infant Sleep Guide is attached hereto as Exhibit 3.

5

2013 and present, the wording on the Product labels has remained constant to this day: that the Bedtime Products are clinically proven to help babies sleep better.

21. The labeling and marketing communicates a persistent and material message and makes a common and pervasive representation that the Products are clinically proven to help babies sleep better. These core representations alleged to be false and misleading, that the Products themselves are clinically proven to help babies sleep better, are contained on the Product label itself for every purchaser to read.

22. On the front of the bottle of the Products, there is a prominent logo that proclaims: "CLINICALLY PROVEN, HELP BABY SLEEP BETTER." (Exhibits 1, 2).[3]

23. J&J claims that its Bedtime Bath and Bedtime Lotion are clinically proven to help babies and toddlers fall asleep better, and are now labeled as able to help babies who have "trouble sleeping" achieve a "better night's sleep." (Exhibits 1-2).

24. Therefore, Defendant expressly represented that the Products were clinically proven to help baby sleep better.

25. As Defendant knows, however, contrary to the clear labeling and advertising, the Bedtime Products themselves are not clinically proven.

26. J&J further states, on the back label of the Bedtime Product bottles, that it has also created a "clinically proven" nighttime routine of a warm bath (with the Products), gentle massage (with the Products), and quiet activities (e.g., reading, cuddling, and singing lullabies):

> Treat your baby to a bath with **JOHNSON'S® BEDTIME BATH®**, a gentle massage with **JOHNSON'S® BEDTIME LOTION®**, a few minutes of quiet time, and your baby will drift off to a better night's sleep.

(*See* Exhibits 1, 2) (emphasis added). Thus, in addition to the false representation that the Products themselves are clinically proven, Defendant also has carefully created the misleading and deceptive impression that consumers can use the clinically proven Product **and** the clinically

---

[3] Although there have been minor variations of the label, since 2010, these same exact words have remained constant.

6

proven "nighttime routine" to help baby sleep better.

27. Throughout the relevant time period, Defendant has marketed the Products using uniformly deceptive advertising and packaging. Likewise, the labeling and marketing for the Bedtime Lotion and Bedtime Bath contain substantially the same message. A typical label promises that:

   a. the Products are "CLINICALLY PROVEN, HELP BABY SLEEP BETTER" (Exhibits 1, 2);

   b. the Products help your baby fall asleep easier and sleep through the night better (Exhibits 1, 2); and

   c. the nighttime routine is clinically proven to help babies and toddlers sleep better (Exhibits 1, 2).

28. At no time, however, either in its labels, advertising, or so-called clinical studies, does J&J attempt to sell the routine, or to describe the use of the routine or its studies, without **also** including the Bedtime Products in the description of the routine and in the description of the studies. Nor would one expect it to, since Defendant does not sell routines – it sells Bedtime Products. *See* http://www.johnsonsbaby.com/difference/baby-science#sleep.

29. Not surprisingly, and consistent with its goal of selling **products** (not routines), Defendant has recently added a new **product** to its line - the JOHNSON'S® Baby BEDTIME® Washcloths. The front of the package proclaims that the washcloths are "clinically proven help baby sleep better."[4] The label also states that the customer should "Try our other JOHNSON'S® Baby BEDTIME® **products** to help baby sleep better." (Exhibit 4) (emphasis added).

30. Defendant has also repeated its unfair and/or deceptive representations about its Products on its websites: www.johnsonsbaby.com, www.jnj.com, and www.johnsonsprofessional.com. The content of the websites contains materially the same message about the Products that Defendant has put on the labels of the Bedtime Products and disseminated since its launch.

---

[4] A true and correct copy of the product label for the washcloths is attached hereto as Exhibit 4.

31. Defendant's website advertising also states that the Products are formulated with NATURALCALM™, a "special blend of gentle and calming aromas."[5] *See also* https://www.johnsonsbaby.com/babywash/johnsons-bedtime-lotion. (NATURALCALM™ is a special blend of gentle and calming aromas).

32. At some point since January 2013, Defendant changed this language from the prior representation, that it was a "unique blend of patent pending essences that has been tested and proven to have relaxing properties." In fact, since the time of the introduction of the Bedtime Products, J&J has claimed that NATURALCALM™ is a "patent-pending blend of gentle and soothing aromas" proven to promote calming and a relaxed state.[6]

33. However, Defendant is well aware that the patent for NATURALCALM™ was never tested with babies or children.

34. Defendant also states that the Bedtime Lotion is "clinically shown to last all night long." (Exhibit 5).

35. Since the launch of the Products and to the present, J&J has consistently and uniformly stated on its labeling and in its other advertisements that the Products are clinically proven to help babies sleep better. J&J intended the statement to appear scientific and give the claims a special significance, when in reality, Defendant knows the Products themselves are not clinically proven.

36. J&J did not test the "routine" with products other than the Bedtime Products, such as J&J's long-sold ordinary bath products, another company's products, or with no products at all.

37. In the United Kingdom, a challenge to the advertising of the very claims at issue here found that Defendant's advertising was "likely to mislead" as Defendant failed to show that it was the use of the Products in the suggested routine that was proven to help babies sleep better

---

[5] A true and correct copy of the website page from 2014 is attached hereto as Exhibit 5.
[6] A true and correct copy of the product label for Bedtime Lotion is attached hereto as Exhibit 6, and a true and correct copy of the product label for the Bedtime Bath is attached hereto as Exhibit 7. Both were used in or around January, 2013, but were changed sometime between that date and the present.

and because the advertising did not make clear that the routine had only been tested on babies over seven months old. The Advertising Standards Authority Council "told them to ensure that any similar advertising did not suggest that Johnson's products, as part of the bedtime routine, had been proven to help babies sleep better and to make clear that the routine had been proven to work only for babies over seven months old." *See* ASA Adjudication on Johnson & Johnson Ltd, Apr. 30, 2008, formerly available at http://www.asa.org.uk/ASA-action/Adjudications/2008/4/Johnson-and-Johnson-Ltd/TF_ADJ_44345aspx.[7]

38. All of these representations made by J&J on the Product labels are deceptive, false, and misleading. Moreover, as a result of these representations, Defendant was able to sell, to Plaintiff and other consumers, the Bedtime Products at a premium over its plain lotion and wash products (*e.g*. JOHNSON'S® Baby Lotion, JOHNSON'S® Baby Wash, or other comparable name brand products), which cost at least twenty-five percent (25%) less than Bedtime Products. In other words, Plaintiff purchased the Products at a premium price over other baby bath and lotion products.

39. Had Plaintiff and other members of the proposed Class been aware of the truth, they would not have purchased the more expensive Bedtime Products or would have paid substantially less for them.

**Plaintiff's Experiences**

40. Plaintiff's claims are based on the Products' labels. On or about 2014, Plaintiff viewed the claims on the label of the bottles of the Bedtime Products at a Target store in Peoria, Illinois. In particular, Plaintiff recalls reading Defendant's claims on the labels that the Products were better than the other J&J products because these Products (and only these Products) were "clinically proven" to help babies sleep better.

41. Plaintiff also noticed that the labels of other baby wash and lotion products, including J&J's long-sold regular products and other brand name products, did not contain

---

[7] A true and correct copy of the decision is attached hereto as Exhibit 8.

9

claims that the products were "clinically proven" to help babies sleep better. As a result, the labels on the Products convinced Plaintiff to purchase the Bedtime Products, instead of any other similar baby wash and lotion products, to help her baby sleep better.

42. Defendant's claims that the Products would help the baby sleep better also induced Plaintiff, **in addition to** her purchase of the Bedtime Bath Products, to also purchase J&J's long-sold regular products, **for use in the daytime**.

43. In reliance on the label's claims that the Bedtime Products were clinically proven to help her baby sleep better, Plaintiff purchased two bottles of Bedtime Lotion and Bedtime Bath at the Target located at 5001 N Big Hollow Road, Peoria, IL 61615.

44. Plaintiff used the Bedtime Lotion in conjunction with the Bedtime Bath in accordance with J&J's 3-step routine.

45. The labeling of the Product bottles, and the representations therein, were made by Defendant. Reasonably relying on the claims made on the labeling of the bottles, Plaintiff purchased the Products. Plaintiff reasonably expected that the Products would work as advertised and sold and, thus, used the Bedtime Products as directed.

46. After using the Bedtime Products as part of the 3-step nightly routine for a period of time with her child, Plaintiff discontinued use, as she determined that the use of the Bedtime Products (included in the "routine") did not help her baby sleep better.

47. Plaintiff suffered actual damages and loss, in the amount of the total price of the Bedtime Products purchased and/or the price premium of the Bedtime Bath Products, as a result of the improper actions described herein.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, seeking injunctive and other relief on behalf of herself and all other similarly situated members of the Class, defined as follows:

> All persons who purchased the Bedtime Products within Illinois, not for resale or assignment.

10

49. Specifically excluded from this Class are: (a) Defendant, its officers, directors, agents, trustees, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities related to or affiliated with Defendant and/or its officers and or directors, or any of them; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Bedtime Products; and (c) the Judge to whom this case is assigned.

50. **Numerosity/Impracticability of Joinder.** The members of the Class are so numerous that joinder of all members is impracticable. The proposed Class includes thousands of members. The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody, and control, or otherwise obtained through reasonable means.

51. **Typicality.** The representative Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent. Plaintiff and all members of the Class purchased the Bedtime Products at a premium price due to the same wrongful course of conduct. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

52. **Commonality and Predominance.** Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendant engaged in a pattern of fraudulent, deceptive, and misleading conduct targeting the public through the marketing, advertising, promotion, labeling, and/or sale of the Bedtime Products;

11

b. Whether Defendant made material misrepresentations of fact or omitted to state material facts to Plaintiff and the Class regarding the marketing, promotion, advertising, and sale of the Bedtime Products, which material misrepresentations or omissions operated as a fraud and deceit upon Plaintiff and the Class;

c. Whether Defendant's false and misleading statements of fact and concealment of material facts regarding the Bedtime Products were intended to deceive the public;

d. Whether, as a result of Defendant's misconduct, Plaintiff and the Class are entitled to equitable relief and other relief, and, if so, the nature of such relief;

e. Whether Plaintiff and the members of the Class have sustained loss and damages as a result of Defendant's acts and omissions, and the proper measure thereof; and

f. Whether such a failure violates statutory and common law prohibitions against such conduct, as detailed more fully below.

53. **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff is a member of the Class and does not have interests antagonistic to, or in conflict with, the other members of the Class.

54. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since, among other things, individual litigation and/or joinder of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by individual Class members as a result of Defendant's

wrongful conduct alleged herein are too small to warrant the expense of individual litigation. The likelihood of individual Class members prosecuting their own separate claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions and individualized litigation would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff does not foresee any difficulty in the management of this litigation that would preclude its maintenance as a class action.

55. Adequate notice can be given to Class members directly using information maintained in Defendant's records, or through notice by publication.

56. The Class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted on grounds generally applicable to the putative Class members, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the Class.

57. The Class may be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to Class members will predominate over questions affecting individual members, and a class action is superior to all other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

### NOTICE TO ATTORNEY GENERAL OF ACTION

58. Pursuant to 815 ILCS 505/10a(d), a copy of this Complaint has been mailed to the

Attorney General simultaneously with the filing of the Complaint.

## FIRST CAUSE OF ACTION

**Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 Ill. Comp. Stat. 505/1** *et seq.*

59. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

60. Plaintiff brings this claim individually and on behalf of an Illinois Class.

61. As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because she purchased the Bedtime Products in reliance on Defendant's claims detailed above, but did not receive a product containing the characteristics detailed above.

62. At all times relevant hereto, there was in full force and effect ICFA, 815 ILCS 505/1 *et seq.*

63. ICFA is a regulatory and remedial statute intended to protect consumers, including Plaintiff and the Class, against unfair or deceptive acts or practices. Specifically, Section 2 of ICFA prohibits deceptive acts or practices, which are committed in the course of trade or commerce and with the intent that others rely upon them. 815 ILCS 505/2.

64. Section 2 provides, in full:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2.

65. Section 2 of the Uniform Deceptive Trade Practices Act states in relevant part that:

> A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person ... represents that goods or services have . . . characteristics, . . . uses, [or] benefits . . . that they do not have . . . .

815 ILCS 510/2(a)(5).

66. Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

67. The above-described unfair or deceptive acts or practices occurred in the course of conduct involving trade or commerce, namely, the sale of goods to Plaintiff and the Class.

68. Defendant's practice of knowingly and unlawfully engaging in the activity described above also constitute "unfair" business acts or practices because, *inter alia*, Defendant engaged in false advertising, which misrepresents and omits material facts regarding the Products. Defendant's business acts or practices therefore offend an established public policy, and engage in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, as alleged in detail *supra*, and therefore is an unfair or deceptive act or practice prohibited by Chapter 2 of ICFA. 815 ILCS 505/2.

69. Defendant intended that Plaintiff and the Class rely on its deceptive acts or practices described *supra*. Defendant's intent is evidenced by its actions, claims, nondisclosures, and misleading statements, as alleged in this Complaint that were false, misleading, and likely to deceive the consuming public, *inter alia*, its knowledge that its material misrepresentations or

15

omissions were unlawful in Illinois and its continuation of such activity in the face of such knowledge while omitting to disclose or notify Plaintiff and the Class that its claims were false.

70. Plaintiff has in fact been deceived as a result of her reliance on Defendant's material representations and omissions, which are described above.

71. Defendant's material representations and omissions described above have caused harm to Plaintiff and other members of the Class who each purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

## SECOND CAUSE OF ACTION

### Unjust Enrichment

72. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

73. A party is unjustly enriched when it retains a benefit to the detriment of another party against the fundamental principles of justice, equity, and good conscience.

74. Defendant was unjustly enriched by engaging in the following practices, *inter alia*, in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Products:

    a. Representing that the Products had characteristics, uses or benefits which they do not alone have;

    b. Representing that the Products are of a particular standard, quality, or grade, when they are of another;

    c. Advertising the Products with intent not to sell them as advertised; and

    d. Representing that the Products have been supplied in accordance with a

16

previous representation when they have not.

75. Defendant was unjustly enriched after making the representations and advertisements about the Products, described above, because Defendant knew, or should have known, that the representations and advertisements were unsubstantiated, false, and misleading.

76. Here, Defendant reaped millions of dollars in revenue as a result of its scheme to deceive Plaintiff and the Class regarding its false representations of its Bedtime Products' clinically proven efficacy to help babies sleep. That Defendant has amassed such earnings pursuant to their deceptive behavior violates the fundamental principles of justice, equity, and good conscience.

77. Defendant continues to be unjustly enriched by the misleading labeling of its Bedtime Products.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class defined herein, prays for judgment and relief as follows as appropriate for the above causes of action:

A. That the Court enter an order certifying this action as a class action;

B. Appointing Plaintiff as Class representative and her undersigned counsel as Class counsel;

C. Awarding Plaintiff and the proposed Class members damages;

D. Awarding statutory damages, including treble damages, to the extent available;

E. Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

F. Awarding injunctive relief as permitted by equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing

Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

G. Ordering Defendant to engage in corrective advertising campaign;

H. Awarding attorneys' fees, expert fees and costs; and

I. Providing such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 2, 2015      Respectfully submitted by

*/s/ Jayne Goldstein*

Jayne A. Goldstein
Mark B. Goldstein
**POMERANTZ LLP**
IL Bar No. 6310724
10 S. LaSalle Street, Ste. 3505
Chicago, IL 60603
Tel.: (312) 377-1181
Fax: (312) 377-1184
jagoldstein@pomlaw.com

James C. Shah
Natalie Finkelman Bennett
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
35 East State Street
Media, PA 19063
Tel.: (610) 891-9880
Fax: (866) 300-7367
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

James B. Zouras
Ryan F. Stephan
Andrew C. Ficzko
Teresa M. Becvar
Jorge A. Gamboa
**STEPHAN ZOURAS, LLP**
205 N. Michigan Avenue, Suite 2560

Chicago, Illinois 60601
Tel.: (312) 233-1550
Fax: (312) 233-1560
jzouras@stephanzouras.com

**Attorneys for Plaintiff and the Proposed Class**