**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

STEPHANIE LEINER, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

      vs.

JOHNSON & JOHNSON CONSUMER
COMPANIES, INC.,

                Defendant.

Case No.: 15-CV-5876

Hon. Elaine E. Bucklo

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR**
**<u>PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT</u>**

Jayne A. Goldstein, Esq.
Perry E. Gattegno, Esq.
POMERANTZ LLP
10 S. LaSalle St., Suite 3505
Chicago, IL 60603
T:  (312) 377-1181
Email: jagoldstein@pomlaw.com
      pgattegno@pomlaw.com

Ryan F. Stephan, Esq.
James B. Zouras, Esq.
Andrew C. Ficzko, Esq.
Jorge A. Gamboa, Esq
STEPHAN ZOURAS, LLP
205 N. Michigan Ave., Suite 2560
Chicago, IL 60601
T:  (312) 233-1550
F:  (312) 233-1560
Email:  rstephan@stephanzouras.com
      jzouras@stephanzouras.com

James C. Shah, Esq.
Natalie Finkelman Bennett, Esq.
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
35 East State Street
Media, PA 19063
T:  (610) 891-9880
F:  (866) 300-7367
Email:  jshah@sfmslaw.com
      nfinkelman@sfmslaw.com

*Counsel for Plaintiffs and the Putative Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

I.   INTRODUCTION ...................................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................................... 2

     A.   Plaintiffs' Allegations .................................................................................... 2

     B.   History of the Litigation ................................................................................ 3

          1.   *Leiner* Action (Northern District of Illinois) ..................................... 3

          2.   *Real* Action (Central District of California) ...................................... 4

          3.   *Hidalgo* Action (Southern District of New York) ............................. 5

          4.   *Gallagher* Action (Superior Court of New Jersey) ............................ 5

     C.   History of Settlement Negotiations ............................................................... 6

     D.   The Terms of the Settlement Agreement ....................................................... 7

          1.   Common Fund ...................................................................................... 8

          2.   Injunctive Relief ................................................................................. 9

          3.   Dismissal With Prejudice and Release of Claims ................................ 9

     E.   Notification to Class Members ..................................................................... 10

III. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
     APPROVED ............................................................................................................. 11

     A.   The Proposed Settlement Meets The Standard For Preliminary
          Approval ...................................................................................................... 11

     B.   The Court Should Provisionally Certify the Settlement Class ..................... 12

     C.   The Settlement is Within the "Range of Reasonableness" for
          Preliminary Approval ................................................................................... 20

     D.   The Court Should Order Dissemination of Notice ....................................... 22

IV.  CONCLUSION ........................................................................................................ 24

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  2011 WL 3290302 (N.D. Ill. July 26, 2011)................................................................... 11-12, 20

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................................................................... *passim*

*American Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
  2011 U.S. Dist. LEXIS 84219 (N.D. Ill. July 26, 2011)...........................................................22

*Armstrong v. Board of School Directors*,
  616 F.2d 305 (7th Cir. 1980) ................................................................................12, 20, 21, 22

*Augustin v. Jablonsky*,
  461 F.3d 219 (2d Cir. 2006)......................................................................................................19

*Barragan v. Evanger's Dog & Cat Food Co.*,
  259 F.R.D. 330 (N.D. Ill. 2009).................................................................................................14

*De La Fuente v. Stokely-VanCamp, Inc.*,
  713 F. 2d 225 (7th Cir. 1983) .............................................................................................14, 15

*Deposit Guaranty Nat'l Bank v. Roper*,
  445 U.S. 326 (1980)...................................................................................................................19

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)...................................................................................................................23

*Equal Employment Opportunity Commission v. Hiram Walker & Sons, Inc.*,
  768 F.2d at 884 (7th Cir. 1985)..................................................................................................22

*Felzen v. Andreas*,
  134 F.3d 873 (7th Cir. 1998) .....................................................................................................12

*Flood v. Dominguez*,
  270 F.R.D. 413 (N.D. Ind. 2010) ...............................................................................................13

*Gallagher v. Johnson & Johnson Consumer Companies, Inc.*,
  2016 WL 1030143 (D.N.J. Mar. 15, 2016)...................................................................................5

*GE Capital Corp. v. Lease Resolution Corp.*,
  128 F.3d 1074 (7th Cir. 1997) ...................................................................................................20

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
  2015 WL 8375196 (S.D.N.Y. Dec. 8, 2015) ...............................................................................5

*Hispanics United of DuPage County v. Village of Addison*,
988 F. Supp. 1130 (N.D. Ill. 1997) ........................................................12

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ................................................12, 15, 16, 19

*In re Blood Reagents Antitrust Litig.*,
283 F.R.D. 222 (E.D. Pa. 2012) ...........................................................15

*In re Bromine Antitrust Litig.*,
203 F.R.D. 403 (S.D. Ind. 2001) .........................................................12

*In re Chocolate Confectionary Antitrust Litig.*,
289 F.R.D. 200 (M.D. Pa. 2012) .........................................................17

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir.1996) ...........................................................12, 21

*Kaufman v. American Exp. Travel Related Services Co., Inc.*,
264 F.R.D. 438 (N.D. Ill. 2009) .........................................................13

*Leiner v. Johnson & Johnson Consumer Companies, Inc.*,
2016 WL 128098 (N.D. Ill. Jan. 12, 2016) ...............................................3

*McCue v. MB Financial, Inc.*,
2015 WL 1020348 (N.D. Ill. March 6, 2015) .........................................17, 22

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp.2d 806 (E.D. Wis. 2009) ....................................................17

*Mirfasihi v. Fleet Mortgage Corp.*,
356 F.3d 781 (7th Cir. 2004) ...........................................................24

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ...........................................................24

*Muro v. Target Corp.*,
2005 U.S. Dist. LEXIS 14409 (N.D. Ill. July 15, 2005) .................................13

*Muro v. Target Corp.*,
580 F. 3d 485 (7th Cir. 2009) ...........................................................15

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
231 F.R.D. 280 (N.D. Ill. 2005) .........................................................15

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) .................................................................................19

*Retired Chicago Police Assoc. v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) ......................................................................16

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ................................................................14

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009) .............................................................14

*Smith v. Sprint Communications Co.*,
    387 F.3d 612 (7th Cir. 2004) ..................................................................13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006) ..................................................................20

*Tardiff v. Knox County*,
    365 F.3d 1 (1st Cir. 2004) .......................................................................19

*Zolkos v. Scriptfleet, Inc.*,
    2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) .........................................13

## <u>Rules</u>

Fed R. Civ. P. 23 ................................................................................... *passim*

## <u>Other Authorities</u>

Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS,
    § 8.2 at 162-65 (4th ed. 2002)................................................................23

*Manual for Complex Litigation* (Fourth) (2004) § 21.63 ...........................11

## I.    INTRODUCTION

Plaintiff, Stephanie Leiner ("Plaintiff" or "Leiner"), individually and on behalf of all other members of the proposed settlement class, respectfully submits this unopposed memorandum in support of the motion for an order granting preliminary approval of a Joint Stipulation of Settlement ("Settlement Agreement") with Defendant, Johnson & Johnson Consumer Inc. ("Defendant" or "JJCI") (Plaintiff and Defendant, collectively, the "Parties"), in this action (the "Litigation").[1]    The proposed settlement resolves the above-captioned action as well as three additional consumer class actions filed in the Central District of California, the Southern District of New York and the Superior Court of New Jersey.[2]

To facilitate the settlement ("Settlement") and pursuant to the provisions of Federal Rule of Civil Procedure 23, Plaintiffs also ask the Court to provisionally certify a settlement class (the "Settlement Class"), appoint Plaintiffs as the Settlement Class Representatives, appoint Plaintiffs' counsel as Class Counsel, schedule a Final Approval Hearing, and direct that notice of the proposed Settlement Agreement and hearing be provided to Settlement Class Members ("Class Members") in a manner consistent with the agreed-upon notice provisions in the Settlement Agreement.

As detailed below, the Court should preliminarily approve the Settlement Agreement

---

[1] The Settlement Agreement and its exhibits are attached hereto at Exhibit "A" to the Declaration of James C. Shah ("Shah Decl."), filed herewith.  The defined terms in the Settlement Agreement are capitalized herein and incorporated by reference.

[2] The additional cases are captioned, *Real v. Johnson & Johnson Consumer Companies, Inc.*, Case No. 2:15-cv-05025-SVW-JEM (C.D. Cal.) ("*Real* Action"); *Hidalgo v. Johnson and Johnson Consumer Companies, Inc.*, 1:15-cv-051990 SAS (S.D.N.Y.) ("*Hidalgo* Action"); and *Gallagher v. Johnson & Johnson Consumer Companies, Inc.*, Case No. L-2557-15 (Sup. Ct. N.J.) ("*Gallagh*er Action").  Along with Leiner, Plaintiffs Jacqueline Real ("Real"), Jinette Hidalgo ("Hidalgo"), and Jillian Gallagher ("Gallagher") are referred to collectively herein as "Plaintiffs" or "Class Representatives."

because, among other things, it provides substantial benefits to Class Members, includes a comprehensive Notice Plan, and satisfies the requirements of Fed R. Civ. P. 23(e).

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs' Allegations

On July 2, 2015, Leiner filed her complaint in the Northern District of Illinois. Subsequently, on August 9, 2015, Leiner filed an Amended Complaint.  This is a class action alleging consumer fraud arising from Defendant's sale of bedtime products, including JOHNSON'S® BEDTIME® Baby Bath, JOHNSON'S® BEDTIME® Baby Lotion, JOHNSON'S® BEDTIME® Baby Moisture Wash, JOHNSON'S® Baby BEDTIME® Washcloths, and JOHNSON'S®  BEDTIME® Baby Bubble Bath & Wash (collectively, "Product(s)"), that were labeled, marketed and/or advertised as "clinically proven [to] help baby sleep better." The claims all center on the fact that, until early 2016, on the front of each Product bottle, there was a prominent logo that proclaimed that the Products were "CLINICALLY PROVEN, HELP BABY SLEEP BETTER."[3]

Plaintiffs allege that JJCI charges a premium for the Products over its other baby washes and lotions, which premium Plaintiffs and other consumers paid (and continue to pay) with the specific understanding, based upon Defendant's false and misleading labeling, advertising, and pervasive representations, that using the Products, either alone or in connection with the "clinically proven" nighttime routine, will help babies sleep better.  As alleged in the complaints, as a result of seeing these false and misleading representations, Plaintiffs and consumers bought the Products, paid more for the Products than they otherwise would have paid absent the wrongful conduct, and

---

[3] JJCI also markets and advertises, on the back of the bottles, that it has created a "clinically proven" nighttime routine of a warm bath, gentle massage (with the Products), and quiet activities that will help babies sleep better (*e.g.*, reading, cuddling, and singing lullabies).

have been damaged as a result of the wrongful conduct. The Amended Complaint alleges that the labeling is false and misleading, as the effects of the use of the Products themselves have not been clinically proven, as opposed to the use of the Products with a routine described on the back of the bottles, and asserts causes of action for violations of various state consumer fraud acts.[4] Amended Complaint, ¶¶ 1-4, 13-39, 58-72.

## B. History of the Litigation

### 1. *Leiner* Action (Northern District of Illinois)

On July 2, 2015, Leiner filed her initial complaint in the Northern District of Illinois. (ECF 1.) On August 24, 2015, Defendant moved to stay, and to seek transfer of the *Leiner* Action to the Central District of California, to which Leiner objected. (ECF 16-22.) After a hearing on September 1, 2015, this Court denied transfer. (ECF 24.) On October 1, 2015, Defendant filed a motion to dismiss and strike class allegations. (ECF 32-33.) On January 12, 2016, this Court denied the motions. *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, No. 15 C 5876, 2016 WL 128098 (N.D. Ill. Jan. 12, 2016) (ECF 47.) A scheduling order was entered on February 3, 2016 (ECF 43), and affirmative and defensive discovery were propounded and answered. The Parties negotiated and entered into a Stipulation for Protective Order and a Protocol for Production of Electronically Stored and Hardcopy Information, which were to be used in connection with each of the actions. (ECF 58-59.) Documents have been produced by both Parties and Leiner's

---

[4] The complaints filed in the three other actions are very similar to the Amended Complaint, except that each complaint asserts claims under the laws where the complaint was filed. The claims include the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; New York General Business Law § 349; the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*; California Consumers Legal Remedies Act, Civil Code § 1750, *et seq.* ("CLRA"); Unfair Competition Law, California Business and Professions Code § 17200, *et seq.* ("UCL"); and False Advertising Law, California Business and Professions Code, § 17500, *et seq.* ("FAL").

deposition was taken on April 13, 2016.[5]  In addition, the Parties have exchanged the identity of their experts.  On July 8, 2016, the Court granted the Parties' Motion to Stay Pending Settlement Proceedings.  (ECF 65.)

### 2. *Real* Action (Central District of California)

On July 7, 2014, Real sent her CLRA letter to Defendant.  Thereafter, Defendant's counsel contacted her counsel, and they engaged in a series of discussions concerning Real's allegations and the discovery that occurred in the *Lieberson* Action.  Defendant's counsel was also supplied with the proposed draft complaint. Some additional informal information was exchanged, including the provision of limited sales data.  The Parties subsequently participated in an unsuccessful mediation on May 21, 2015 at JAMS, Santa Monica, before the Honorable Stephen J. Sundvold (Ret.).

Thereafter, on July 2, 2015, Real filed her complaint in the Central District of California.  After multiple motions to dismiss and to strike class allegations, on February 8, 2016, Judge Wilson denied the motions.  A scheduling order was entered on April 13, 2016, and affirmative and defensive discovery were served and responded to.  Documents have been produced, and the Parties disclosed their experts.  On July 5, 2016, the court granted the Parties' Motion to Stay Pending Settlement Proceedings.

---

[5] Class Counsel previously filed in 2010, and litigated through partial discovery, a nearly identical putative class action making similar allegations in the District of New Jersey, captioned *Lieberson, et al. v. Johnson & Johnson Consumer Companies, Inc.*, CA No.10-cv-6196.  The complaint survived, in part, following motion practice, but was later voluntarily dismissed.  Some document discovery was conducted by the parties and approximately 5,000 pages of documents were produced by Defendant, which discovery the Parties in the pending Litigation agreed could be used herein.

### 3. *Hidalgo* Action (Southern District of New York)

On July 2, 2015, Hidalgo filed her complaint in the Southern District of New York.  On August 20, 2015, Defendant filed a letter request with Judge Scheindlin seeking transfer to the Central District of California, to which Hidalgo objected.  A hearing was conducted on September 2, 2015, and the court denied the transfer.  On October 1, 2015, Defendant filed a motion to dismiss and motion to strike class allegations.  On December 8, 2015, Judge Scheindlin denied the motion to strike and motion to dismiss except for the granting the dismissal of the injunctive relief and unjust enrichment claims.  *Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, No. 15-CV-5199 (SAS), 2015 WL 8375196 (S.D.N.Y. Dec. 8, 2015).  A scheduling order was entered on April 27, 2016, and affirmative and defensive discovery were served and responded to.  Documents have been produced and the Parties exchanged the identity of their experts.  On June 30, 2016, the court granted the Parties' Motion to Stay Pending Settlement Proceedings.

### 4. *Gallagher* Action (Superior Court of New Jersey)

On July 2, 2015, Gallagher filed her complaint in the Superior Court of New Jersey, Camden County, Law Division.  On August 12, 2015, Defendant removed the action to the District of New Jersey and on August 18, 2015, Defendant also filed a motion to transfer the action to Central District of California.  Gallagher opposed transfer and filed a motion for remand.  In March, 2016, the court remanded the *Gallagher* Action to the Superior Court of New Jersey.  *Gallagher v. Johnson & Johnson Consumer Companies, Inc.,* No. 15-6163 (JBS/AMD), 2016 WL 1030143, at *7 (D.N.J. Mar. 15, 2016) (granting motion to remand).  Affirmative and defensive discovery have been served and responded to and documents were produced.  In July, 2016, the court granted the Parties' Motion to Stay Pending Settlement Proceedings.

### C.       **History of Settlement Negotiations**

Settlement discussions began in early 2015.  At that time, JJCI provided Plaintiffs confidential, aggregate information regarding its sales of the Products and additional information about the studies underlying JJCI's labeling was provided in discovery.  On May 21, 2015, the Parties attended a mediation session before the Honorable Stephen J. Sundvold (Ret.).  The mediation was unsuccessful.

Thereafter, the Plaintiffs filed their complaints in the four jurisdictions and, as set forth above, litigated the case for about a year.  In June 2016, the Parties attended a second mediation with a nationally respected mediator, retired Federal Judge Layn Phillips, at his office in California.  That mediation resulted in further progress, but also did not result in a settlement. However, for the next several weeks, Judge Phillips continued to facilitate discussions between the Parties, in an attempt to resolve the Litigation, which efforts ultimately resulted in the Settlement being presented to the Court.  As set forth more fully herein, the Settlement calls for the creation of a Five Million Dollar ($5,000,000.00) common fund for the benefit of the Settlement Class Members (defined below).

As is evident from the foregoing, the Settlement Agreement involved extensive and protracted negotiations that involved two respected neutrals.  The Settlement Agreement was reached only after the provision of information and sales data that allowed Class Counsel to adequately evaluate the possibility of settlement, and only after the exchange of written discovery, the production of thousands of pages of discovery documents, and a deposition. In addition, the Parties briefed motions to dismiss in Illinois, New York and California, as well as motions to stay and transfer, and were in the course of completing class-directed discovery and depositions when settlement discussions began in earnest.  Thus, the Settlement was reached after considerable

investigation and careful consideration and discussions. The Parties were thus fully aware of the issues and risks associated with their respective claims and defenses. As Plaintiffs have investigated this case, they recognized that there are obstacles to certification and to success on the merits, including issues of proof, causation, and damages. Although Plaintiffs do not view any of these obstacles as insurmountable, the Settlement provides immediate nationwide class relief proportionate to the strength and weaknesses of the Settlement Class' claims. Plaintiffs believe that these benefits are commensurate with the merits of and challenges to their claims, and that the Settlement is adequate, fair, and reasonable. Accordingly, Plaintiffs respectfully submit that preliminary approval of the Settlement and provisional certification for the Settlement Class is appropriate.

### D.  The Terms of the Settlement Agreement

As set forth in the Settlement Agreement, Plaintiffs' counsel and counsel for Defendant have negotiated a proposed Settlement that, if approved, will provide substantial benefits to the following Class: "All persons who purchased Covered Products within the United States, the District of Columbia, and all U.S. territories, including Puerto Rico, Guam and the Virgin Islands, and each of their respective spouses, executors, representatives, heirs, successors, bankruptcy trustees, guardians, wards, agents and assigns, and all those who claim through them or assert duplicative claims for relief on their behalf, from July 1, 2010 to the date the Court enters the Preliminary Approval Order."[6]

---

[6] "Covered Product(s)" means the Bedtime Products that were labeled, marketed and/or advertised as "clinically proven [to] help baby sleep better" or to be used as part of a "bedtime" or "nighttime" routine, including: JOHNSON'S® BEDTIME® Baby Bath, JOHNSON'S® BEDTIME® Baby Lotion, JOHNSON'S® BEDTIME® Baby Moisture Wash, JOHNSON'S® Baby BEDTIME® Washcloths, and JOHNSON'S® BEDTIME® Baby Bubble Bath & Wash. (Shah Decl., Exhibit A, Settlement Agreement, § II.A.15.)

Excluded from the Settlement Class are: (i) purchasers of the Covered Products with the revised labels from early 2016 that state on the front label "clinically proven routine helps baby fall asleep faster and stay asleep longer;" (ii) those who purchased Covered Products for purpose of resale; (iii) those with claims for personal injuries arising from the use of Covered Products; (iv) Defendant and its officers, directors and employees; (v) any person who files a valid and timely Request for Exclusion; and (vi) the Judge(s) to whom these Actions are assigned and any members of his/her/their immediate families.

The Settlement Agreement calls for the following relief:

### 1. Common Fund

JJCI will establish a Settlement Fund in the amount of $5,000,000 no later than thirty (30) days from the entry of the Preliminary Approval Order. A Class Member is entitled to obtain $3 for each purchase of a Covered Product for up to five (5) units, without the need to present proof of purchase. To receive Settlement relief, each Settlement Class Member must submit a valid and timely Claim Form either by mail or electronically.

Class Members wishing to claim reimbursement for more than five (5) units will need to show proof of purchase to be eligible to be reimbursed for purchases of the Covered Products exceeding five (5) units, up to ten (10) units. The actual amount paid to individual claimants will depend upon the number of valid claims made and the amount in the Net Settlement Fund at the time of payment. If the aggregate amount of Eligible Claims submitted by Settlement Class Members exceeds the available relief, each Settlement Class Member's Eligible Claim Amount will be reduced *pro rata*. If the total amount of the timely, valid, and approved Eligible Claims submitted by Settlement Class Members results in there being any remaining value in the Settlement Fund, it will be used to increase eligible Settlement Class Members' relief on a *pro*

*rata* basis such that Settlement Class Members shall receive an additional increased payment of up to one hundred percent (100%) of the Eligible Class Members' Initial Claim Amount. For example, if the Settlement Class Member submitted an Initial Claim of $15.00 and sufficient funds are remaining, the Settlement Class Member could receive up to a $30.00 payment from the Settlement Fund. The Settlement Administrator will determine each authorized Settlement Class Member's *pro rata* share based upon each Settlement Class Member's Claim Form and the total number of valid Claims and based upon the agreed Claim Form Protocol. Shah Decl., Exhibit A, § V. Notably, none of the Settlement Amount will revert to the Defendant. *Id.* at § IV.C.4. Any residual funds will be donated on a *cy pres* basis, subject to the Court's approval, to be paid 75% to Nurse-Family Partnership and 25% to Newborns In Need.

### 2. Injunctive Relief

After the filing of the Litigation, Defendant changed the labels of the Products to include language stating that the "routine helps baby fall asleep faster and stay asleep longer," or similar language referencing the routine alongside any clinically proven language. As part of the consideration for this Settlement, and because Plaintiffs do not contend that the revised language contains misrepresentations, JJCI agreed to continue to include the above-cited language that exists on the Products currently being distributed by JJCI or on any subsequent revisions to the Products' labels that include the "clinically proven" language. *Id*., § IV. B.

### 3. Dismissal With Prejudice and Release of Claims

In exchange for these significant benefits, the Settlement Agreement provides that all Members of the Class will fully release Defendant from all claims relating in any way to the labeling, advertising, marketing, packaging, promotion, sales and distribution of the Covered Products, and dismiss the Action. *See id.* §§ III.B; IX. The release (the complete and controlling

terms of which are set forth in full in the Settlement Agreement) does not, however, include any claims for personal injuries.

Plaintiffs' Counsel will request an award of Attorneys' Fees and Expenses to be paid from the Settlement Fund, not to exceed $1.65 million. *Id.* at § X.A. Class Counsel will also make an application for service awards for each of the Plaintiffs in the amount of $5,000 each. *See id.* at § X.C. JJCI will take no position on the request for Attorneys' Fees and Expenses and the request for Service Awards. *Id.*

### E. <u>Notification to Class Members</u>

The Settlement Agreement requires Class Counsel to take all necessary and reasonable steps to ensure that notice of the Settlement is provided to the Class in accordance with Rule 23. The Settlement Agreement contains a notice and administration program ("Notice Program"). *See* Shah Decl., Settlement Agreement, § VII and Exhibit 2. Through a competitive process in which bids were solicited from different vendors, the Parties have agreed - subject to Court approval - to use Dahl Administration LLC ("Administrator" or "Settlement Administrator") to handle the Notice Program and claims administration process.

The Administrator has developed a Notice Program with six elements: (i) web-based notice using paid banner ads on targeted websites; (ii) additional web-based notice using "keyword" searches displaying banner ads; (iii) social media notice ads targeting relevant interest areas; (iv) placement of the Short Form Notice (Exhibit 4 to Settlement Agreement) for print publication one time in *Parents Magazine*; (v) a dedicated, informational website through which Settlement Class Members can obtain more detailed information about the Settlement and access downloadable copies of the Long Form Notice (Exhibit 3 to Settlement Agreement) and case documents; and (vi) toll-free telephone helpline by which Settlement Class Members can obtain additional information

about the Settlement and request a copy of the Notice.  *See* Declaration of Jeffrey D. Dahl, attached

as Exhibit "B" to the Shah Declaration.  Finally, at or prior to the Final Approval Hearing, the

Administrator shall provide an affidavit to the Court attesting that notice was disseminated in a

manner consistent with the terms of the Settlement Agreement (or in a manner otherwise required

by the Court).  Shah Decl., Exhibit A, Settlement Agreement, § VII, A, 2.

Consistent with Fed R. Civ. P. 23(c) and (e), all Class Members will be provided with a

reasonable opportunity to object to the Settlement, or to exclude themselves from it.  *See id.* §

VIII.  In addition, the notices will each advise potential Class Members of:  (i) the nature of the

action; (ii) the definition of the Class certified; (iii) the Class claims, issues or defenses; (iv) that a

Class Member may enter an appearance through counsel if the Member so desires; (v) that the

Court will exclude from the Class any Member who requests exclusion and when and how

Members may elect to be excluded; and (vi) of the binding effect of a Class judgment on Class

Members under Rule 23(c)(3).

## III.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.     The Proposed Settlement Meets The Standard For Preliminary Approval

Federal Rule of Civil Procedure 23(e) governs class action settlements.  There is a well-

accepted procedure and specific criteria for preliminary and final approval of class action

settlements.  *See Manual for Complex Litigation* (Fourth) (2004) § 21.63 (describing a three-step

procedure for approval of class action settlements consisting of preliminary approval, notice and

a final hearing).

For purposes of preliminary approval, "the court's task is merely to determine whether the

proposed settlement is within the range of possible approval, not to conduct a full-fledged inquiry

into whether the settlement meets Rule 23(e)'s standards."  *Am. Int'l Grp., Inc. v. ACE INA*

*Holdings, Inc.*, Nos. 07 C 2898, 09 C 2026, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (quotation omitted); *see also In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001). The Court's function is simply "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (same). Notice is the linchpin of due process in the settlement of a class action, affording every class member the opportunity at (or prior to) a fairness, or final approval, hearing to object to class certification, the notice program, and the settlement. With the benefit of that input, the court exercises its independent judgment and decides whether the settlement is fair, adequate and reasonable in light of all the circumstances of the action. Then, and only then, may the court enter an order of final approval of the settlement.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Indeed, "[i]t is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement." *Armstrong*, 616 F.2d at 312-13 (quotations omitted); *see also Hispanics United of DuPage County v. Village of Addison*, 988 F. Supp. 1130, 1149 (N.D. Ill. 1997) ("[c]ompromise is particularly appropriate in complex class actions.") Evaluations of fairness, reasonableness and adequacy require that the facts be viewed in a light most favorable to the settlement. *Isby*, 75 F.3d at 1199.

**B.**      <u>**The Court Should Provisionally Certify the Settlement Class**</u>

"Before addressing the substantive provisions of the Settlement Agreement, the court must first determine whether the proposed class can be certified" for settlement purposes.

*Kaufman v. American Exp. Travel Related Services Co., Inc.*, 264 F.R.D. 438, 441-42 (N.D. Ill. 2009) (citing *In re Bromine Antitrust Litig.*, 203 F.R.D. 403). Class certification is an exercise of judicial discretion, and "[t]he fact that the parties have reached a settlement is a relevant consideration in the class-certification analysis." *Zolkos v. Scriptfleet, Inc.*, No. 12-Civ-8230 (GF), 2014 WL 7011819, at *1 (N.D. Ill. Dec. 12, 2014) (citing *Smith v. Sprint Communications Co.*, 387 F.3d 612, 614 (7th Cir. 2004)); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.")

Plaintiffs request that the Court certify, for settlement purposes, only under Federal Rule of Civil Procedure 23(a) and 23(b)(3), the Settlement Class defined above. When presented with a request to preliminarily approve a proposed class settlement, a court's evaluation may be more relaxed than when considering entry of a final order binding all class members to the settlement's terms. Nevertheless, the Court must still determine whether the proposed settlement class satisfies Rule 23's requirements. As demonstrated below, no reason exists to refrain from provisionally certifying, for settlement purposes, the proposed Settlement Class.

**Rule 23(a)(1)**. The first requirement asks whether the proposed class is so numerous that joinder is impracticable. Although the rule provides no firm number, courts have held that numerosity can be satisfied where more than 40 putative class member exist. *See, e.g., Flood v. Dominguez*, 270 F.R.D. 413, 417 (N.D. Ind. 2010) ("[g]enerally speaking, when the putative class consists of more than 40 members, numerosity is met"); *Muro v. Target Corp.*, No. 04-6267, 2005 U.S. Dist. LEXIS 14409, at *39 (N.D. Ill. July 15, 2005) ("[p]ermissive joinder is usually deemed

impracticable where the class members number 40 or more"). Here, JJCI has sold millions of Products nationwide. Accordingly, Rule 23(a)(1)'s numerosity requirement is easily met.

**Rule 23(a)(2)**. The next question is whether there are questions of law or fact common to the class. "Commonality requires that there be at least one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Here, common issues for the Settlement Class include, for example: whether Defendant engaged in a pattern of fraudulent, deceptive, and misleading conduct targeting the public through the marketing, advertising, promotion, labeling, and/or sale of the Products; whether Defendant made material misrepresentations of fact or omitted to state material facts regarding the marketing, promotion, advertising, and sale of the Products, which material misrepresentations or omissions operated as a fraud and deceit upon Plaintiffs and the Class; and whether Defendant's false and misleading statements of fact and concealment of material facts regarding the Products were intended to deceive the public. Given that Plaintiffs need only show one common question of law or fact to establish commonality under the rule, *see Barragan*, 259 F.R.D. at 334, Plaintiffs satisfy the commonality requirement for the Settlement Class.

**Rule 23(a)(3)**. A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the same legal theory.'" *Rosario v. Livaditis*, 963 F. 2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokely-VanCamp, Inc.*, 713 F. 2d 225, 232 (7th Cir. 1983)). Rule 23(a)'s typicality requirement should be "liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009). So long as "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," typicality is satisfied. *Id.* (citation omitted); *see*

*also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). Rule 23(a)(3) "'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target Corp.*, 580 F. 3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente*, 713 F. 3d at 232).

Here, the claims of Plaintiffs and the Settlement Class all arise out of JJCI's practices with respect to the labeling, marketing and advertising, and representations regarding the Products. Plaintiffs' legal theories include violations of state consumer protection statutes for the deceptive labeling of the Products. Plaintiffs' claims are "typical" of those of the Settlement Class. *Saltzman*, 257 F.R.D. at 479; *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 233 (E.D. Pa. 2012).

**Rule 23(a)(4)**. The requirement that "the representative parties . . . fairly and adequately protect the interests of the class . . . serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods.*, 117 S. Ct. at 2250. This requirement "tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id*. at 2251 n. 20. Because of the unique nature of the class action device, "[t]he adequacy-of-representation requirement 'is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.'" *In re AT&T Mobility Wireless Data Servs.*,

270 F.R.D. at 343 (quoting *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)) (further internal quotations and citation omitted).

"A class representative must . . . 'be part of the class and possess the same interest and suffer the same injury as the class members.'" *In re AT&T Mobility Wireless Servs.*, 270 F.R.D. at 343 (quoting *Amchem Prods.*, 117 S.Ct. at 2245) (further internal quotations and citation omitted). "This requires the district court to ensure that there is no inconsistency between the named parties and the class[,] . . . [because a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id.* (internal quotations and citations omitted). In this case, there are no conflicting or antagonistic claims – Plaintiffs' claims are consistent with those of the Settlement Class. Neither the claims asserted in the Amended Complaint nor the terms of the Settlement afford any opportunity for preferential treatment. The named Plaintiffs' interests are aligned with those of all absent Settlement Class Members, and all members of the Settlement Class will have an equal opportunity to obtain benefits under the Settlement, based solely on their purchase of the Bedtime Products for personal use.

Likewise, Plaintiffs' Counsel are adequately representing the interests of the Settlement Class. "Plaintiffs' [C]ounsel have invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement." *In re AT&T Mobility Data Servs.*, 270 F.R.D. at 344 (citation omitted). Plaintiffs' Counsel have conducted their independent investigation, consulted with experts and reviewed discovery and other confidential documents provided by Defendant before the Settlement was reached. Nothing they have learned has altered their view that the proposed Settlement is fair and reasonable.

Indeed, the use of a mediator after discovery and Plaintiffs' independent investigation, as well as arm's-length negotiations with JJCI, demonstrate Plaintiffs' Counsel's pursuit of the interests of the Class and their determination to avoid even an appearance of collusion with Defendant. *See McCue v. MB Financial, Inc.*, No. 15-cv-00988, 2015 WL 1020348, at *2 (N.D. Ill. March 6, 2015) (citing *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp.2d 806, 813 (E.D. Wis. 2009)).

With respect to the adequacy of Class Counsel, they have invested considerable time and resources into the prosecution of this action. Class Counsel have a wealth of experience in litigating complex class action lawsuits and have competently and aggressively prosecuted this matter and were able to negotiate an outstanding Settlement for the Class Members in this case. The adequacy requirement is, therefore, met here. The firm resume of Shepherd Finkelman Miller & Shah, LLP is attached as Exhibit "C" to the Shah Declaration and the firm resume of Pomerantz LLP is attached as Exhibit "D." In short, Plaintiffs and their counsel have demonstrated that they "are fully capable of litigating this case." *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012). Accordingly, the adequacy requirement is satisfied in this case.

**Rule 23(b)(3)**. Once Rule 23(a) is satisfied, Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only and that a showing of manageability at trial is not required. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997) ("Confronted with a request for

settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

Here, there are numerous common questions of law and fact that predominate over any questions that may affect individual Class Members. For example, if this case were to proceed, the primary issue would be whether the clinically proven claims made by JJCI were false and misleading, and whether Defendant is liable to the Class under the claims pled in the Amended Complaint based on the labeling on the Products. These issues are subject to generalized proof, and are common to all Class Members. It is neither required nor expected that there are no individual questions, only that the common questions predominate. Were this case proceeding to trial, the Parties would argue about whether any individual issues would necessitate countless mini-trials and render class treatment unmanageable. However, the Court need not take into consideration whether a potential trial would be manageable because Plaintiffs seek certification for settlement purposes only. *See Amchem*, 521 U.S. at 620. For purposes of the proposed Settlement, any individual issues are mooted. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

Rule 23(b)(3) lists four factors that the Court should consider in taking into account whether a class action is superior to other methods of adjudicating this action: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

An assessment of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure in this case. The amount of damages suffered by Settlement Class Members is not large. It is neither economically feasible, nor judicially efficient, for thousands of Class Members to pursue their claims against Defendant on an individual basis. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). The Settlement Agreement provides Members of the Class with the ability to obtain prompt, predictable, and certain relief, and it contains well-defined administrative procedures to ensure due process. This includes the right of Class Members who may be dissatisfied with the Settlement to object or exclude themselves from it.

The Settlement also will relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendant by going forward with this case as a class action. And because the Parties seek to resolve this case through a Settlement, any difficulties of managing a class action are vitiated by the facts of this Settlement. When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Finally, the Parties are not aware of any other pending lawsuit, class action or otherwise, brought by a Class Member against Defendant for the conduct alleged in this case. Therefore, "class status here is not only the superior means, but probably the only feasible [way]…to establish liability and perhaps damages." *Augustin v. Jablonsky*, 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)). "[T]he improbability that large numbers of class members would possess the initiative to litigate individually" further compels a finding of superiority. *See AT&T Mobility*, 270 F.R.D. at 344-345; *Amchem*, 521 U.S. at 617 (same); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (same). In sum, because the requirements of Rule 23(a) and Rule 23(b)(3)

are satisfied, conditional certification of the proposed Settlement Class for purposes of Settlement is appropriate.

### C. The Settlement is Within the "Range of Reasonableness" for Preliminary Approval

When granting final approval of a settlement, courts consider: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *5 (N.D. Ill. July 26, 2011) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653 (7th Cir. 2006)). See also GE Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1082 (7th Cir. 1997). "At the preliminary approval stage, however, the court's task is merely to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Am. Int'l Grp.,* 2011 WL 3290302, at *6 (citation omitted). A review of this criteria demonstrates that the proposed settlement is clearly "within the range of possible approval." *See id.* at *6.

The proposed Settlement in this case is highly favorable, and is clearly "within the range of possible approval." *See Armstrong*, 616 F.2d at 314. The $5,000,000 cash fund conferred by the Settlement, as well as the change of the label to eliminate the concerns raised by the Plaintiffs, is an excellent result, especially given that Settlement Class Members (who paid a premium of approximately $1.00 per unit for the Covered Products) can receive $3.00 per unit for up to five units without any proof of purchase and up to 10 units with proof of purchase. The Settlement proposed here is well within the range of possible approval.

The proposed Settlement appropriately reflects the strength of Plaintiffs' claims, which had

surpassed a motion to dismiss and were, in the view of Class Counsel, well-supported by record evidence. The proposed Settlement also reflects that risks remained which could reduce or completely thwart any recovery. Determining whether Defendant engaged in unfair methods of competition, unconscionable acts and practices, unfair and deceptive acts and practices, and whether the "clinically proven" claims were material and false, would require survey and damages experts (including the building of complex conjoint analyses) and extensive and complex briefing for both Parties before the issues can even be presented to the factfinder. At a minimum, absent the Settlement, litigation would likely continue for years before Plaintiffs or the Settlement Class might see any recovery. That a settlement would eliminate the delay and expenses strongly weighs in favor of approval. Moreover, there is no assurance that the Class would prevail in connection with certification of the classes or at trial, that it would achieve the full measure of damages sought (especially in light of reliance and causation defenses raised by Defendant) or that any verdict would be sustained on appeal. At any rate, proceeding through trial and appeal would be extremely expensive, complex and take several years.

While Plaintiffs and Class Counsel believe that they would prevail on their claims, there is no guarantee of success. The proposed settlement provides an excellent recovery for the Settlement Class while eliminating the risk, expense, and uncertainty of continued litigation. An evaluation of the benefits of settlement must also be tempered by a recognition that any compromise involves concessions on the part of all of the settling parties. Indeed, the "'essence of settlement is compromise.'" *Isby*, 75 F.3d at 1200 (quoting *Armstrong,* 616 F.2d at 315).

Plaintiffs and Class Counsel strongly believe that the proposed Settlement is in the best interests of the Class. They have reached this determination after conferring and considering the strengths and weaknesses of the claims asserted, the likelihood of prevailing and the range of

possible damages that could be achieved if they prevailed at trial, the risk, expense and duration of continued litigation, and the likely appeal of any successful verdict. Having litigated the issues in the cases for a number of years and dealing with motions to transfer, stay, and dismiss the claims and class action allegations, as well as engaging in discovery, during which time Class Counsel reviewed numerous documents and information, Class Counsel was able to assess the Settlement with a deep understanding of the factual and legal issues involved. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McCue v. MB Fin., Inc.*, No. 1:15-CV-00988, 2015 WL 1020348, at *1 (N.D. Ill. Mar. 6, 2015) (citations and quotations omitted); *see also Equal Empl. Opp. Commiss. v. Hiram Walker & Sons, Inc*, 768 F.2d 884, 889 (7th Cir. 1985) (significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class).

In sum, the Settlement proposed is comfortably "within the range of possible approval[,]" *Armstrong*, 616 F.2d at 310, and is not obviously deficient. At this juncture, the Court need not decide the ultimate question: whether the proposed Settlement is, in the Court's estimation, fair, reasonable, and adequate. *American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at *32-33 (N.D. Ill. July 26, 2011) (citing *Armstrong*, 616 F.2d at 314). Accordingly, at the preliminary approval stage, courts need not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Id.* For all of the foregoing reasons, the Settlement warrants the Court's preliminary approval.

**D.** **The Court Should Order Dissemination of Notice**

Rule 23 requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 8.2 at 162-65 (4th ed. 2002). The Parties, with the assistance of the Settlement Administrator, have designed a Notice Program, discussed above, intended to maximize the reach of a fully informative Notice to as many Settlement Class Members as is practicable given the finite temporal nature of a notice program and the need to balance efficiency and effectiveness so as to maximize the overall benefits of the Settlement across the widest number of Settlement Class Members. Plaintiffs' Counsel believe that the Notice Program, in conjunction with the structure of the Settlement, will indeed maximize not only the number of Settlement Class Members who receive notice, but also the number of claims submitted by those Class Members.

As summarized above and detailed in the Notice Program and accompanying documents, as well as in the proposed Order Granting Preliminary Approval (Shah Decl., Exhibit A, Settlement Agreement, at Exhibits 1-5), Plaintiffs' Counsel and the Administrator propose a multi-faceted Notice Program, including publication, and web-based notice using key-word searches displaying banner ads, social media notice, dissemination of information regarding the Settlement on a Settlement Website, where Settlement Class Members can access documents of interest, as well as a toll-free number with information about the Settlement. *See* Shah Decl. Exhibit B.

This proposed Notice Program meets the requirements of due process because it alerts and informs members of the Settlement Class through means calculated to maximize the number of recipients of the proposed Notice. The contents of the proposed Notice, and the proposed method of its dissemination, comport with Federal Rules of Civil Procedure 23(c)(2) and 23(e), as well as due process. *See generally Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974) (due process is satisfied by mailed notice to all class members who reasonably can be identified);

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015)(when the names and addresses of class members are not knowable with reasonable effort, notice of class action can be accomplished by alternative means such as by publication notice); *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004)(notice by publication and on website maintained by firm hired to administer settlement was acceptable substitute for individual notice).

## IV.     CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court grant their motion for preliminary approval of the Settlement, provisionally certify, for Settlement purposes only, the Settlement Class, appoint the Class Representatives and Settlement Class Counsel, and order dissemination of the Notice to Settlement Class Members, in the form and manner described above and in accordance with the Notice Plan and other documents submitted as exhibits herewith. A Proposed Order is being submitted herewith.

Dated: August 18, 2016          Respectfully submitted,

                                POMERANTZ LLP

                                  /s/Jayne A. Goldstein
                                Jayne A. Goldstein, Esq.
                                Perry E. Gattegno, Esq.
                                10 S. LaSalle St., Suite 3505
                                Chicago, IL 60603
                                T:  (312) 377-1181
                                Email:  jagoldstein@pomlaw.com
                                        pgattegno@pomlaw.com

                                James B. Zouras, Esq.
                                Jorge A. Gamboa, Esq.
                                Ryan F. Stephan, Esq.
                                Andrew C. Ficzko, Esq.
                                STEPHAN ZOURAS, LLP
                                205 N. Michigan Ave., Suite 2560
                                Chicago, IL 60601
                                T:  (312) 233-1550
                                F:  (312) 233-1560

James C. Shah, Esq.
Natalie Finkelman Bennett, Esq.
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 East State Street
Media, PA 19063
T:  (610) 891-9880
F:  (866) 300-7367
Email:  jshah@sfmslaw.com
        nfinkelman@sfmslaw.com

*Counsel for Plaintiffs and the Putative Class*