# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHANIE LEINER, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>vs.<br><br>JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,<br><br>    Defendant. | Case No.: 15-CV-5876<br><br>Hon. Elaine E. Bucklo |

## DEFENDANT'S RESPONSE TO OBJECTIONS TO CLASS ACTION SETTLEMENT

**I.  INTRODUCTION**

Out of an estimated 12.9 million class members, only two have objected to the Class Action Settlement Agreement (the "Agreement")[1] that is awaiting final approval by the Court in this matter: Ashley Hammack, *see* ECF No. 83 ("Hammack Objection"), and Pamela Sweeney. *See* ECF No. 87 ("Sweeney Objection," and, together with the Hammack Objection, the "Objections").  Both Objections apply a scattershot approach, objecting without legal or factual support.

In reality, the Settlement reached between Plaintiffs and Johnson & Johnson Consumer Inc. ("JJCI") is extremely favorable to Settlement Class Members who submit claims.  As discussed more fully in the Memorandum of Law in Support of Class Counsel's Motion for Final Approval of Class Action Settlement,  ECF No. 91 ("Plaintiffs' Motion for Final Approval"), the Agreement provides Settlement Class Members substantial recovery for their alleged injuries, has enjoyed a high claim rate that validates the robust Notice Program, and was negotiated with

---

[1] Unless otherwise indicated, all capitalized terms used herein have the same defined meaning assigned to them as in the Joint Stipulation of Settlement, ECF No. 75-1.

1

the help of a highly respected mediator without any indicia of collusion. Ms. Hammack and Ms. Sweeney both fail to raise any objections that should prevent the Agreement from being approved.

## II. ARGUMENT

### A. Ms. Hammack Fails To Raise Any Meritorious Objections.

At the outset, Ms. Hammack has failed to comply with the Preliminary Approval Order's requirement that she provide "the name and case number of all objections to class action settlements made by the objector or his or her counsel in the last five years . . . ." ECF No. 81 at 9. Specifically, Ms. Hammack has neglected to disclose her unsuccessful objection in *Lerma v. Schiff Nutrition International, Inc.*, in the Southern District of California. *See Lerma*, Case No. 3:11-cv-1056 (S.D. Cal.), Objection of Ashley Hammack, ECF No. 158, attached as Exhibit A to the Declaration of Kristen Reilly ("Reilly Decl."). *See also Lerma*, 11CV1056-MDD, 2015 WL 11216701, at *5-9 (S.D. Cal. Nov. 3, 2015) (rejecting Ms. Hammack's objections). Such a failure to comply with the Preliminary Approval Order bars Ms. Hammack's Objection. Even if it did not, her objections are baseless.

#### 1. The high claim rate will exhaust the settlement fund, leaving no funds for the *cy pres* beneficiaries.

The simple fact is that claims are sufficiently numerous that no funds will be distributed to the *cy pres* beneficiaries, making Ms. Hammack's major objection moot. But, even if funds were going to those charities, they are sufficiently connected with the underlying claims to be appropriate.

Although Ms. Hammack spends a large portion of her Objection asserting that the *cy pres* distributions do not align with the underlying claims of the Litigation, as both parties articulated to this Court at the Preliminary Approval Hearing, the two charities each have a direct nexus to

the Settlement Class Members – parents with infants. Tr. of Prelim. Approval Hr'g (Aug. 31, 2016) 17:18 – 19:13 ("Hr'g Tr."), relevant portions attached at Reilly Decl. Exhibit B.

However, this issue is now academic; the Agreement's favorable terms for recovery and the robust Notice Program have resulted in a high claim rate, leaving no funds for any *cy pres* distributions.

Each Settlement Class Member who files a claim is eligible to receive a range of $3.00 - $6.00 for each Covered Product purchased. ECF No. 75-1 § IV.A.4. A Settlement Class Member can claim up to five (5) Covered Products without proof of purchase and ten (10) Covered Products with proof of purchase. *Id.* As of December 29, 2016, Settlement Class Members have filed 249,923 claims for 1,182,252 Covered Products. Declaration of Jeffrey D. Dahl ¶ 20 ("Dahl Decl."), ECF No. 91-2. Thus, regardless of what amount the Court approves for Class Counsel's fees and costs or for Service Awards to the Named Plaintiffs,[2] there will be no Residual Settlement Amount left to make any *cy pres* distribution. *See* ECF No. 75-1. § IV.C.4.

2.  <u>The limit on the number of claimed products is reasonable.</u>

Ms. Hammack next asserts that the Agreement's limitation of claims is arbitrary and that this "provision can only benefit the defendant . . . ." Hammack Objection at 2. These assertions lack merit.

First, the Agreement does not provide for a reversion of any unclaimed funds to JJCI. ECF No. 75-1 § II.A.39 ("The Settlement Fund is non-reversionary, and any Residual Settlement Amount will be distributed through a cy pres process to an entity mutually agreed to by the Parties and approved by the Court."). Second, Courts routinely accept such limitations on

---

[2] JJCI takes no position on Class Counsel's request for fees and expenses.

recovery. *See*, *e.g.*, *Nigh v. Humphreys Pharmacal, Inc.*, 12CV2714-MMA-DHB, 2013 WL 5995382, at *7 (S.D. Cal. Oct. 23, 2013) (approving settlement that limited recovery for each household to "either $50 without proof of purchase or $100 with proof of purchase"); *Poertner v. Gillette Co.*, 6:12-CV-803-ORL-31DA, 2014 WL 4162771, at *1 (M.D. Fla. Aug. 21, 2014) (approving settlement limiting recovery to "between $6.00 and $12.00 per household, depending on whether they submit proof of purchase"), *aff'd,* 618 F. App'x 624 (11th Cir. 2015), *cert. denied sub nom. Frank v. Poertner*, 136 S. Ct. 1453 (2016). Indeed "[i]t is patently difficult to award damages to cash purchasers without proof of purchase, as these claims would be ripe for abuse." *Rougvie v. Ascena Retail Group, Inc.*, CV 15-724, 2016 WL 4111320, at *15 (E.D. Pa. July 29, 2016).

And while Ms. Hammack claims that "it is extremely likely that class members would have bought the same product more than 5 times in a single year," Hammack Objection at 1-2, the Claims submitted to date belie this assertion, including Ms. Hammack's own claim for only 2 purchases of any Covered Products during the entire six year Class Period. Dahl Decl. ¶ 25. As regards the limit on claims with proof of purchase, the claims experience to date indicates that it was extremely unusual for anyone to have proof of purchase for ten or more Covered Products. *Id.* ¶ 22 (stating that only 614 Settlement Class Members submitted claims for 10 Covered Products).

Finally, even if some Settlement Class Members have purchased more than the allotted amount, the extremely favorable terms of the Agreement offset any potential Covered Products that have gone unclaimed. According to the Amended Complaint, the alleged misrepresentations on the labels of the Covered Products allowed JJCI to charge a premium of $1.00 for each bottle purchased. Am. Compl. ¶ 4, ECF No. 70. *See also* Reilly Decl. Exhibit B at 7:13-14. ("It's

plaintiffs' contention that there was approximately a $1 premium on the products."). Through the Agreement, Settlement Class Members can receive up to $6.00 *per bottle* of the Covered Product purchased, see ECF No. 75-1 § IV.A.4, more than compensating them for the entire premium paid and nearly the entire amount paid for the Covered Products. Reilly Decl. Exhibit B at 4:16 (Class Counsel stating that Covered Products cost "up to $6.50"). Such complete relief is strong evidence of the fairness and adequacy of a settlement. *See In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 711 (7th Cir. 2015) (emphasizing that "essentially complete relief for the class is the model of an adequate settlement").

3. The injunction provides real relief to class members.

The Agreement also provides for injunctive relief that prohibits JJCI from using the allegedly deceptive labeling on any of the Covered Products in the future. ECF No. 75-1 § IV.B. Ms. Hammack complains that JJCI can make further changes to its labels, Hammack Objection at 3, but this is only true (i) if the changes continue to include language referencing the routine alongside any clinically proven language; (ii) to the extent product changes or additional testing ensures accurate product descriptions; or (iii) if the labels are *more* detailed than those required by the Agreement. ECF No. 75-1 § IV.B(4). Ms. Hammack's argument is a red herring.

4. No additional notice is necessary.

Ms. Hammack's complaint regarding the Notice Program, asking that if "an inadequate number of class members have filled out a class form, [] the Court should order additional notice to the class," is negated by the fact that, as discussed above, no Settlement Funds will remain for a *cy pres* distribution, rendering this objection moot. *See supra*, Part I.A.1.

Ms. Hammack's other claim, that "[t]he website should be designed for class members to be able to opt out online," Hammack Objection at 4, has been rejected by courts that have considered such objections. *See In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985,

5

998 (N.D. Ohio 2016) (rejecting objection based on inability to opt out online instead of by mail); *Howerton v. Cargill, Inc.*, 13-00336 LEK-BMK, 2014 WL 12611322, at *3 (D. Haw. Dec. 2, 2014) (finding, in product labeling case, that "requiring opt-out by mail is not unduly financially burdensome").

        5.        <u>The release is not overbroad.</u>

Contrary to Ms. Hammack's complaint that the release is overbroad, Hammack Objection at 5, courts have repeatedly noted that "[i]t is not at all uncommon for settlements to include a global release of all claims past, present, and future." *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 274 (7th Cir. 1998). *See also Wright v. Nationstar Mortgage LLC*, 14 C 10457, 2016 WL 4505169, at *12 (N.D. Ill. Aug. 29, 2016) (approving settlement that included release of "*all* claims 'arising from the use of automatic telephone dialing systems or an artificial or prerecorded voice'") (emphasis in original).

"In a class action settlement setting, defendants seek and pay for global peace–i.e., the resolution of as many claims as possible." *Klein v. O'Neal, Inc.*, CIV. A. 7:03-CV-102-D, 2009 WL 1174638, at *3 (N.D. Tex. Apr. 29, 2009). Such global peace "is a valid, and valuable, incentive to class action settlements." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 311 (3d Cir. 2011). *See also In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 261 F.3d 355, 366 (3d Cir. 2001) ("permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions" serves an "important policy interest of judicial economy") (internal quotation marks omitted). In this case, JJCI has agreed to the Agreement precisely to achieve the sort of global peace that these cases describe.

        6.        <u>There is no evidence of collusion.</u>

Finally, Ms. Hammack asks the Court to "look for all signs of collusion," Hammack Objection at 5, but does not point to any part of the Agreement that would suggest any collusion.

The Agreement comes after more than six years of litigation including five separate but related actions filed by Class Counsel, during which the parties have aggressively litigated their positions, engaged in significant discovery, and participated in two mediations, including one with retired Federal Judge Layn Phillips that led to the Agreement. *See* Class Counsel's Motion for an Award of Attorneys' Fees, ECF No. 85-1 at 4-8. As this Court has held, the fact that "the parties have vigorously defended their positions throughout the litigation, participated in two prior mediations, and engaged in discovery" indicates that the settlement is not unfair or collusive. *Nationstar Mortgage LLC*, 2016 WL 4505169, at *11; *accord Zolkos v. Scriptfleet, Inc.*, 12 CIV. 8230 GF, 2014 WL 7011819, at *2 (N.D. Ill. Dec. 12, 2014) (fact that settlement was achieved through use of a well-respected mediator "reinforces the non-collusive nature of the settlement").

Simply put, nothing about the Agreement is suggestive of collusion.

**B.     Ms. Sweeney Fails To Raise Any Meritorious Objections.**

Ms. Sweeney's objection need not be considered at all, as it was not filed until December 22, 2016, three days after the deadline set by this Court, and JJCI's counsel did not receive a copy from Ms. Sweeney until December 20. *See* Reilly Declaration ¶ 5; Minute Entry Regarding 8/31/2016 Hearing, ECF No. 80 (setting final approval hearing for January 18, 2017); Order Preliminarily Approving Class Action Settlement, ECF No. 81, ¶ 25 (requiring that objections be filed "no later than 30 days before the date first set for the Final Approval Hearing" and that copies of such papers be sent to all counsel of record). Further, Ms. Sweeney, a known serial objector, *see* Plaintiffs' Motion for Final Approval at 30, did not provide the name and case number of ***all*** objections to class action settlements she has made in the last five years, as required by the Preliminary Approval Order, *see* ECF No. 81, ¶ 25, omitting at least three such objections. *See Edwards v. National Milk Producers Fed'n,* No. 4:11-cv-04766-JSW (N.D.

Cal.), ECF No. 449, Reilly Decl. Exhibit C; *Rouguie v. Ascena Retail Grp., Inc.*, 2:15-cv-00724-MAK (E.D. Pa.), ECF No. 116, Reilly Decl. Exhibit D; *In re: Capital One Tel. Consumer Prot. Act Litig.*, No. 1:12-v-10064 (N.D. Ill.), ECF No. 327, Reilly Decl. Exhibit E.

Even if Ms. Sweeney's decision to ignore this Court's requirements is itself ignored, her objection that the "[c]laims administration process fails to require reliable future oversight, accountability and reporting about whether the claims process actually delivers what was promised" and her proposal of a procedure that she admits "is not the 'usual' procedure in Class Action proceedings" is completely without merit. The Preliminary Approval Order requires Dahl Administration, a reputable third-party claims administrator, to "disseminate Class Notice and supervise and carry out the notice procedure, the processing of claims, and other administrative functions, and [] respond to Class Member inquiries . . . ." ECF No. 81 ¶ 17. Ms. Sweeney provides no reason to believe that Dahl Administration cannot be relied upon to do what this Court ***has ordered it to do***.

## III. <u>CONCLUSION</u>

Ms. Hammack and Ms. Sweeney have both failed to show any reason that the Agreement, which will provide Settlement Class Members with substantial relief for their alleged claims, should not be approved without further delay. JJCI therefore respectfully requests that the Court overrule the objections raised and grant final approval of the Agreement.

Dated: January 4, 2017

Respectfully submitted,

JOHNSON & JOHNSON CONSUMER INC.

  /s/ Mark A. Neubauer
Mark A. Neubauer (admitted *pro hac vice*)
CARLTON FIELDS JORDEN BURT, LLP
2000 Avenue of the Stars
Suite 530 North Tower
Los Angeles, California 90067-4707
T: (310) 843-6300
F: (310) 843-6301
Email: mneubauer@carltonfields.com

Kristen Reilly (admitted *pro hac vice*)
Jason R. Brost
CARLTON FIELDS JORDEN BURT, P.A.
1025 Thomas Jefferson St NW, Suite 400W
Washington, DC 20007
T: (202) 965-8100
F: (202) 965-8104
Email: kreilly@carltonfields.com
      jbrost@carltonfields.com

Daniel Adam Spira
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, IL 60603
T: (312) 853-7000
Email: dspira@sidley.com

*Counsel for Defendant Johnson & Johnson Consumer Inc*.

## CERTIFICATE OF SERVICE

I, Mark A. Neubauer, hereby certify that on January 4, 2017, I electronically filed the foregoing **DEFENDANT'S RESPONSE TO OBJECTIONS TO CLASS SETTLEMENT** with the Clerk of Court using the CM/ECF system, which served a copy upon all counsel of record.

                                            */s/ Mark A. Neubauer*
                                            Attorney